UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MOUSTAPHA MAGASSOUBA,                 :

                 Plaintiff,           :     08 Civ. 4560 (RJH)(HBP)

     -against                         :     REPORT AND
                                            RECOMMENDATION
WARDEN JAMES N. CROSS, et al.,        :

                 Defendants.          :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RICHARD J. HOLWELL, United States

District Judge,


I.  Introduction


          Plaintiff, proceeding pro se, commenced this action on

May 16, 2008.  On September 8, 2008, before any defendants had

answered and in conformity with the then-current provisions of

Federal Rule of Civil Procedure 15, plaintiff filed an amended

complaint.  On or about March 7, 2009, without the consent of the

defendants or leave of court, plaintiff served and attempted to

file a second amended complaint.  Defendants Kenneth Cho, Ileana

Pena, Sharon Fields, Donell Scott, Michael J. Garcia and James N.

Cross (the "Federal Defendants") deemed this second amended

complaint served on March 7, 2009 to be a motion to file a second

amended complaint, and by notice of motion dated April 23, 2009

(Docket Item 30), the Federal Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and opposed the filing of the second amended complaint. On April 26, 2009, apparently realizing that the second amended complaint that he filed on March 7, 2009 was procedurally defective because it was not filed with his adversary's consent or leave of the Court, plaintiff moved for leave to file the second amended complaint (Docket Item 34).

By motion dated January 14, 2010 (Docket Item 47), plaintiff moved again to amend his complaint and sought to withdraw his April 26, 2009 motion to amend; the pleading attached to this motion was also denominated as the "Second Amended Complaint" ("1-14-10 2d Am. Compl."). The second amended complaint that was the subject of plaintiff's April 2009 motion to amend was identical in all material respects to the 1-14-10 2d Am. Compl. except that the former added Armando Perlaza and the then-current United States Attorney for the Southern District of New York, Lev L. Dassin while the latter dropped Dassin as a defendant.

Because the substantive allegations of the 1-14-10 2d Am. Compl. are substantially identical to those set forth in the complaints to which the Federal Defendants' motion is addressed and because the standard for evaluating the futility of a proposed amended pleading is identical to the standard for assessing

2

a Rule 12(b)(6) motion, <u>Kassner v. 2nd Ave. Delicatessen, Inc.</u>, 496 F.3d 229, 244 (2d Cir. 2007); <u>Estate of Ratcliffe v. Pradera Realty Co.</u>, 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y. Oct. 19, 2007) (Keenan, D.J.), in the interests of judicial economy, I shall deem the arguments made in the Federal Defendants' motion to be addressed to both the amended complaint and the 1-14-10 2d Am. Compl.

For the reasons set forth below, I respectfully recommend that the Federal Defendants' motion to dismiss (Docket Item 30) be granted, that plaintiff's January 2010 motion to amend (Docket Item 47) be denied and that plaintiff's application to withdraw his April 26, 2009 motion to amend (Docket Item 34) be granted.  I further recommend that plaintiff's remaining claims be dismissed as a matter of discretion.

II.  <u>Facts</u>[1]

<u>Pro se</u> plaintiff Moustapha Magassouba, an inmate currently in the custody of the Federal Bureau of Prisons, brings this action pursuant to <u>Bivens v. Six Unknown Named Agents of</u>

---

[1]The facts set forth herein are drawn from plaintiff's proposed 1-14-10 2d Am. Compl., plaintiff's affidavits of merit in response to defendants' motion to dismiss and the attachments thereto.  The allegations in the 1-14-10 2d Am. Compl. also appear in plaintiff's amended complaint, ("1st Am. Compl."), unless otherwise noted.

<u>Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)[2], alleging that he was the victim of a number of civil rights violations while he was in the custody of defendants.

On August 12, 2003, plaintiff was indicted on one count of conspiring to violate the narcotics laws of the United States in violation of 21 U.S.C. § 846.  He was detained at the Metropolitan Correctional Center ("MCC") in New York, New York on this charge from May 9, 2005 to June 20, 2008.

Plaintiff alleges that on March 27, 2006, defendant Kenneth Cho, a dentist at the MCC, unnecessarily and improperly removed a tooth causing him "gum infection and severe pain" (1-14-10 2d Am. Compl. at 6).  He also alleges that Cho continuously denied him dental care during his incarceration at the MCC.

_____

[2]In his 1st Am. Compl. and 1-14-10 2d Am. Compl., plaintiff states that he brings his claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1346, the Federal Tort Claims Act, ("FTCA"). However, neither 42 U.S.C. § 1983 nor the FTCA provide a claim against the individual federal officials in this case.  <u>See</u> <u>Dotson v. Griesa</u>, 398 F.3d 156, 162 (2d Cir. 2005); <u>Castro v. U.S.</u>, 34 F.3d 106, 110 (2d Cir. 1994), <u>citing</u> 28 U.S.C. § 2679. Therefore, in light of plaintiff's <u>pro</u> <u>se</u> status, I shall consider his complaint as attempting to assert claims under <u>Bivens v. Six Unknown Named Agents</u>, <u>supra</u>, 403 U.S. 388.  In addition, although plaintiff makes a passing reference to "UNITED STATES, who is MICHAEL J. GARCIA" in the body of the complaint (1-14-10 2d Am. Compl. at 4), Garcia is named as an individual in the caption, in the list of parties that begins plaintiff's complaint, and in plaintiff's affidavit of merit.  Accordingly, I deem the reference to "UNITED STATES who is MICHAEL J. GARCIA" to refer to the former United States Attorney for this district, Michael J. Garcia.

Beginning on January 25, 2008, plaintiff was placed in administrative detention for three weeks.  He alleges that after he was moved from his cell, defendant Ileana Pena, a corrections officer at the MCC, did not "pack" his property for over five days.  As a result, plaintiff claims that other inmates broke into his locker and stole property allegedly valued at approximately four hundred dollars.  Plaintiff further alleges that on April 28, 2008, he was threatened by his cellmate, and defendant Sharon Fields, a counselor at the MCC, failed to separate the two men.  According to plaintiff, her failure to separate plaintiff from his cellmate placed him at "an unreasonable risk of future harm" (1-14-10 2d Am. Compl. at 7-8).

On May 25, 2008 inmates Goldson Hugh, Barris Larry, and Thomas Garfield allegedly attacked plaintiff with a broomstick, a knife, and a wooden brush, causing him serious injuries.  Proposed defendant Armando Perlaza, another corrections officer at the MCC, allegedly witnessed the attack and did not take any action to prevent plaintiff's injuries.  Plaintiff also alleges that two days later, Perlaza told the plaintiff to throw trash on the floor and then "refused to collect [the] trash" (1-14-10 2d Am. Compl. at 8).

On June 3, 2008, a week after he was allegedly injured by the inmate defendants, plaintiff alleges that Officer Donnell Scott handcuffed him with his hands behind his back, despite

5

plaintiff's protestations that handcuffing him in that manner caused him pain, and that Scott then "denied" him a scheduled medical visit (1-14-10 2d Am. Compl. at 10).  Plaintiff alleges that on the following day, Scott put him in a dirty cell with a plumbing problem and that, despite his complaints, he was not moved to a new cell until two days later.  Plaintiff also alleges that on June 9, 2008, Scott handcuffed him and left him in the shower for over three hours without a change of clothes and that a week later Scott "denied him of a protection for his hand from getting wet by water" (1-14-10 2d Am. Compl. at 10).[3]  Finally, he alleges that Scott constantly abused him, took items from his cell, and instructed the commissary officer not to attend to him.

Plaintiff also describes various incidents that he does not ascribe to any particular person.  He states that he was placed in administrative detention for 21 days without explana-tion, received inadequate and unsanitary food, was not given a "diabetic snack" and "starved . . . until his blood sugar go lower than the normal level" (1-14-10 2d Am. Compl. at 11).  He also alleges that his personal clothing was given to charity without his consent, that due to a false accusation by an offi-cer, his telephone and commissary privileges were restricted and that he was generally denied the right to prison employment

---

[3]Plaintiff appears to have sustained an injury to his hand that was aggravated by water (see Plaintiff's Affidavit of Merit, ("Pl's Aff.") at 11).

6

during his incarceration.  Furthermore, he alleges that unidenti-
fied "M.C.C. Officials" failed to give him proper treatment for
injuries resulting from the May 25, 2008 altercation (1-14-10 2d
Am. Compl. at 10).  Finally, he states that he notified James N.
Cross, the warden of the MCC, of his arbitrary placement in
administrative detention and other acts by corrections officers
that placed him at an "unreasonable risk of harm" and that Cross
"acted deliberately indifferent" (1-14-10 2d Am. Compl. at 4,
11).

        Plaintiff states that on February 21, 2008, Cross
instructed him to "file a tort claim" in connection with his
claim for loss of property while he was in administrative deten-
tion, and told him "that the prisoners exhaustion is
[i]napplicable to some of his claims" (1st Am. Compl. at 11; 1-
14-10 2d Am. Compl. at 12)[4]  Plaintiff did in fact file an FTCA

_____

        [4]This alleged statement concerning the inapplicability of
administrative exhaustion to some of plaintiff's claims does not
appear in haec verba in the 1-14-10 2d Am. Compl.  The 1-14-10 2d
Am. Compl. instead reads:  "He stating that the prisoner
exhaustion techniques was tried but he always been denied" (1-14-
10 2d Am. Compl. at 12).

        The 1st Am. Compl. does not identify who told plaintiff that
administrative exhaustion was inapplicable to some of his claims
(1st Am. Compl. at 11) ("he stating that the prisoners exhaustion
is [i]napplicable to some of his claims")).  Plaintiff refers to
himself in the third person throughout the complaint and
frequently uses the phrase "he stating" to introduce his own
observations.  However, because the alleged statement about the
inapplicability of administrative exhaustion to some of
plaintiff's claims immediately follows Cross's alleged
                                                (continued...)

administrative tort claim in connection with his allegedly stolen property on February 21, 2008 which was denied on August 28, 2008.  He also filed an administrative tort claim with respect to his dental treatment on May 8, 2008 that was denied on May 14, 2008 and a BP-8 informal administrative complaint form with respect to the same incident on June 12, 2008.  Plaintiff also filed a BP-8 form in connection with his allegations against Scott on June 10, 2008 and an administrative tort claim on September 12, 2008 with respect to the May 25, 2008 altercation with other inmates.  He does not allege that he filed any other grievances or administrative claims with respect to the matters described in the 1st Am. Compl. or 1-14-10 2d Am. Compl.

Plaintiff's 1st Am. Compl. alleges that, based on the foregoing events, defendants Cho, Pena, Fields, Scott and Cross violated his constitutional rights under the Fifth and Eighth Amendments.  Plaintiff further alleges that Michael J. Garcia, the former United States Attorney for the Southern District of

---

[4](...continued)
instruction to file a tort claim, drawing all inferences in plaintiff's favor, I interpret the 1st Am. Compl. to attribute this statement to Cross.  I cannot, however, similarly construe the sentence in the 1-14-10 2d Am. Compl. concerning the denial of administrative grievances.  Although this sentence also follows Cross's alleged instruction to file a tort claim, its plain meaning is a reference to plaintiff's own experience with the administrative grievance process and it immediately precedes a chronology of plaintiff's failed attempts to file grievances. Therefore, I do not construe the alleged statement concerning the outcome of prisoner grievances as having been made by Cross.

New York, is responsible for the "deliberate indifference" of
"his [e]mployees and subordinates" and has, thus, violated
plaintiff's rights under the Fifth, Eighth and Fourteenth Amend-
ments.  Plaintiff also asserts claims against Hugh, Larry and
Garfield, the inmates who allegedly assaulted plaintiff.  Plain-
tiff now moves to amend his complaint to include claims against
Perlaza, who was previously named as a John Doe defendant, for
violating unspecified constitutional rights.

III.  Analysis

    A.  Standards Applicable to a Motion to
        Dismiss and the Federal Defendants' Claim
        that the Proposed Amended Complaint is Futile

       The standards applicable to a motion to dismiss pursu-
ant to Rule 12(b)(6) and an argument that a proposed amended
pleading is futile are well settled and require only brief
review:

> When deciding a motion to dismiss under Rule 12(b)(6),
> [the court] must accept as true all well-pleaded fac-
> tual allegations of the complaint and draw all infer-
> ences in favor of the pleader.  See City of Los Angeles
> v. Preferred Communications, Inc., 476 U.S. 488, 493,
> 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree v. DeKalb
> County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d
> 557 (1977) (referring to "well-pleaded allegations");
> Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d
> Cir. 1993).  "'[T]he complaint is deemed to include any
> written instrument attached to it as an exhibit or any
> statement or documents incorporated in it by refer-
> ence.'"  Int'l Audiotext Network, Inc. v. Am. Tel. &
> Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)(quoting Cortec
> Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d

Cir. 1991)).  The Court also may consider "matters of
which judicial notice may be taken." <u>Leonard [F.] v.
Israel Discount Bank of New York</u>, 199 F.3d 99, 107 (2d
Cir. 1999) (citing <u>Allen v. WestPoint-Pepper[e]ll,
Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).  In order to
avoid dismissal, a plaintiff must do more than plead
mere "[c]onclusory allegations or legal conclusions
masquerading as factual conclusions." <u>Gebhardt v.
Allspect, Inc.</u>, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)
(quoting 2 James Wm. Moore, Moore's Federal Practice ¶
12.34[a][b] (3d ed. 1997)).

<u>Hoffenberg v. Bodell</u>, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3
(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); <u>see also</u> <u>In re Elevator
Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007); <u>Johnson &
Johnson v. Guidant Corp.</u>, 525 F. Supp. 2d 336, 345-46 (S.D.N.Y.
2007).

The Supreme Court has recently clarified the proper
mode of inquiry for evaluating a motion to dismiss pursuant to
Rule 12(b)(6), utilizing as a starting point the principle that
"[a] pleading that states a claim for relief must contain . . . a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed.R.Civ.P. 8(a).

[I]n <u>Bell Atl[antic] Corp. v. Twombly</u>, 550 U.S.
544 (2007), the Court disavowed the well-known state-
ment in <u>Conley v. Gibson</u> that "a complaint should not
be dismissed for failure to state a claim unless it
appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would enti-
tle him to relief."  550 U.S. at 562.  Instead, to
survive a motion to dismiss under <u>Twombly</u>, a plaintiff
must allege "only enough facts to state a claim to
relief that is plausible on its face."  <u>Id</u>. at 570.

<u>Talley v. Brentwood Union Free Sch. Dist.</u>, Civ. 08-790, 2009 WL
1797627 at *4 (E.D.N.Y. June 24, 2009).

>While a complaint attacked by a Rule 12(b)(6) motion to
>dismiss does not need detailed factual allegations, a
>plaintiff's obligation to provide the "grounds" of his
>"entitle[ment] to relief" requires more than labels and
>conclusions, and a formulaic recitation of the elements
>of a cause of action will not do.  Factual allegations
>must be enough to raise a right to relief above the
>speculative level, on the assumption that all the
>allegations in the complaint are true (even if doubtful
>in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (cita-

tions, internal quotations and alterations omitted).

        However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable

to legal conclusions."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

(2009).  As a result, "a court considering a motion to dismiss

can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption

of truth.  While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations."

Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950.

        In evaluating a motion under Rule 12(b)(6), a court

must determine whether a plaintiff has stated any facially

plausible claims.  A plaintiff's allegations state a facially

plausible claim when their factual content "allows the court to

draw the reasonable inference that the defendant is liable for

the misconduct alleged.  The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  Ashcroft v.

11

Iqbal, supra, 129 S.Ct. at 1949 (citations omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Ashcroft v. Iqbal, supra, 129 S.Ct. at 1949 (internal quotations omitted).  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950, quoting Fed.R.Civ.P. 8(a)(2).

Nevertheless, where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims the allegations suggest.  Haines v. Kernner, 404 U.S. 519, 520 (1972); In re Sims, 534 F.3d 117, 133 (2d Cir. 2008); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Moreover, liberal pleading rules apply "with particular stringency to [pro se] complaints of civil rights violations."  Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003).

    B.  The Parties'
        Contentions

        The Federal Defendants first contend that plaintiff's claims against them should be dismissed because plaintiff has failed to exhaust his administrative remedies.  Furthermore, they

contend that plaintiff's claims fail because (1) Cho is immune from suit under 42 U.S.C. § 233(a), (2) plaintiff's allegations against Cho, Pena, Fields, and certain of his allegations against Scott do not rise to the level of constitutional violations, and (3) because plaintiff does not allege the personal involvement of Garcia and Cross in any constitutional violations.  To the extent plaintiff seeks to amend his complaint to name Perlaza as a defendant, the Federal Defendants oppose the motion on the ground of futility because plaintiff has not exhausted his administrative remedies.

Because the futility of a motion to amend is determined under the same standards as a motion to dismiss, I shall consider plaintiff's existing and proposed claims together.  I first address whether plaintiff has complied with the exhaustion requirement with respect to his existing and proposed claims.  I shall then address whether the surviving allegations state a claim upon which relief can be granted.  Finally, I shall consider whether the dismissal of plaintiff's claims against the Federal Defendants warrants the dismissal of plaintiff's remaining claims for lack of subject matter jurisdiction.

1.   PLRA Exhaustion

As noted above, defendants first contend that all of plaintiff's claims should be dismissed for failure to exhaust his administrative remedies.

> 42 U.S.C. § 1997e(a)[, the Prison Litigation Reform Act or "PLRA"] provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative reme- dies as are available are exhausted." . . . The pur- pose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (quoting Porter[v. Nussle], 534 U.S. [516, 524-25 (2002]).

Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (bracketed material in original); see Marvin v. Goord, 255 F.3d 40, 42 (2d Cir. 2001) (per curiam); Johnson v. Bendheim, 00 Civ. 720 (JSR), 2001 WL 799569 at *4 (S.D.N.Y. July 13, 2001) (Rakoff, D.J.); Grey v. Sparhawk, 99 Civ. 9871 (HB), 2000 WL 815916 at *1 (S.D.N.Y. June 23, 2000) (Baer, D.J.).

> Courts have interpreted the [PLRA] to require complete exhaustion in accordance with institutional procedures. See, e.g., Sulton v. Greiner, 2000 WL 1809284 (S.D.N.Y. Dec. 11, 2000) (granting summary judgment where pris- oner failed to appeal to the CORC); Petit v. Bender, 2000 WL 303280, at *2-3 (S.D.N.Y. March 22, 2000) (prisoner who only partially complied with the griev- ance procedures failed to exhaust his administrative remedies.); Santiago v. Meinsen, 89 F. Supp. 2d 435 (S.D.N.Y. 2000) (prisoners must challenge the condi- tions of their confinement through the highest level of available administrative avenues prior to filing suit).

> This requirement applies even when plaintiffs seek a remedy that cannot be awarded by the administrative body hearing the complaint.

Graham v. Cochran, 96 Civ. 6166 (LTS)(RLE), 2002 WL 31132874 at *6 (S.D.N.Y. Sept. 25, 2002) (Swain, D.J.) (adopting Report & Recommendation of Ellis, D.J.); see also Vidal v. Gorr, 02 Civ. 5554 (LAK), 2003 WL 43354 at *1 (S.D.N.Y. Jan. 6, 2003) (Kaplan, D.J.); Beatty v. Goord, 210 F. Supp. 2d 250, 252-53 (S.D.N.Y. 2000) (Berman, D.J.).

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, supra, 534 U.S. at 532 (2002).  In addition, the PLRA applies to claims asserted by pretrial detainees as well as sentenced prisoners.  See United States v. Al-Marri, 239 F. Supp. 2d 366, 367-68 (S.D.N.Y. 2002) (Marrero, D.J.); Rivera v. State of New York, 96 Civ. 7697 (RWS), 1999 WL 13240, at *4-*5 (S.D.N.Y. Jan. 12, 1999) (Sweet, D.J.).

The PLRA's exhaustion requirement must be met before plaintiff's complaint is filed.  Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."), overruled in part on other grounds, Porter v. Nussle, supra, 534 U.S. at 532; Pugh v. Goord, 571 F. Supp. 2d 477, 490 (S.D.N.Y 2008) (Sullivan, D.J.); Schwartz v. Dennison, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007)

(Holwell, D.J.), aff'd 339 Fed. App'x 28 (2d Cir. 2009).  Thus, a prisoner's attempt to exhaust administrative remedies after the commencement of an action will not defeat a motion seeking dismissal.

Furthermore, "dismissal with prejudice, when remedies are no longer available, is required 'in the absence of any justification for not pursuing [such] remedies.'" Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004), citing Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); Rodriguez v. Westchester County Jail Corr. Dep't, 372 F.3d 485 (2d Cir. 2004).  Many courts, however, dismiss claims without prejudice when a plaintiff's administrative remedies are merely time-barred.  See, e.g., Jones v. Meckley, 07 Civ. 10414 (RWS), 2010 WL 148616 at *2 (S.D.N.Y. Jan. 14, 2010) (Sweet, D.J.); Acosta v. Dawkins, 04 Civ. 6678 (RMB), 2005 WL 1668627 at *5-*6 (S.D.N.Y. July 14, 2005) (Berman, D.J.); Santiago v. Meinsen, supra, 89 F. Supp. 2d at 441. Because the Federal Bureau of Prisons ("BOP") administrative grievance procedures contain provisions that allow for extensions of time to file grievances under some circumstances, administrative remedies may still be available to a plaintiff after the deadline for filing a grievance has passed.  See 28 C.F.R. § 542.14(b) ("Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed"); Burns v. Moore, 99 Civ. 0966 (LMM)(THK), 2002 WL 91607 at *8 (S.D.N.Y.

16

Jan. 24, 2002) (Katz, M.J.) (because inmate grievance procedure allowed extensions of time in certain circumstances administrative remedies were "theoretically" available to plaintiff); cf. Davis v. Rhoomes, 07 Civ. 6592 (JGK), 2009 WL 415628 at *6 (S.D.N.Y. Feb. 19, 2009) (Koeltl, D.J.) (dismissing claim with prejudice where plaintiff's application for more time to file a grievance had been rejected by prison officials); Taylor v. Bermudez, 03 Civ. 0087(NRB), 2003 WL 21664673 at *4 (S.D.N.Y. 2003) (Buchwald, D.J.) (same).

The BOP has a four-step procedure for the resolution of prisoner grievances, which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10.

> The regulations require that inmates first seek informal resolution of their complaints.  See [28 C.F.R.] § 542.13.  If the complaint is not resolved informally, the prisoner may then submit a formal written request, on a designated form, to the facility's warden.  See id. at § 542.14(a).
>
> The deadline for completion of informal review or filing of a formal complaint is twenty days from the event giving rise to the grievance.  See id.  This time period may be extended "[w]here the inmate demonstrates a valid reason for delay."  See id. at § 542.14(b).  If an inmate's formal request is denied, the inmate has twenty days in which to appeal the decision to the appropriate BOP Regional Director, again using a particular form designated by BOP.  See id. at § 542.15(a).  Upon an adverse determination by the Regional Director, the inmate has thirty days in which to appeal to the BOP General Counsel.  See id.

17

Funches v. Reish, 97 Civ. 7611 (LBS), 1998 WL 695904 at *2
(S.D.N.Y. Oct. 5, 1998) (Sand, D.J.); accord Joost v. Menifee,
03 Civ. 1608 (DLC), 2003 WL 22977499 at *2 (S.D.N.Y. Dec. 19,
2003) (Cote, D.J.); Paulino v. Garcia, 02 Civ. 209 (LAP), 2003
WL 21939703 at *2 (S.D.N.Y. Aug. 12, 2003) (Preska, D.J.);
Hylton v. Fed. Bureau of Prisons, CV 00-5747 (RR), 2002 WL
720605 at *2 (E.D.N.Y. Mar. 11, 2002).

     An inmate is entitled to a response to a grievance
filed at the institutional level within 20 days, a response to a
grievance filed with a BOP Regional Director within 30 days and
a response to a grievance filed with General Counsel within 40
days.  These time limits are subject to limited extensions, and
an inmate must be given notice of any extension.  The BOP's
failure to respond to a grievance within the specified time
period constitutes a denial of the grievance and permits the
inmate to appeal the decision to the next highest level.  28
C.F.R. § 542.18.

     The record indicates that although plaintiff filed
formal administrative grievances, i.e. the second step of the
BOP's inmate grievance procedure, regarding incidents unrelated
to this complaint, he has not done so in connection with the
incidents described in the 1st Am. Compl. or the 1-14-10 2d Am.

18

Compl. (Johnson Aff. ¶¶ 6-7).  Indeed, plaintiff alleges that he has only exhausted the first step of the inmate grievance procedure -- filing forms BP-8 -- with respect to only his claims against Cho and his claims against Scott (1-14-10 2d Am. Compl. at 12-14).  Plaintiff did file two FTCA administrative tort claims in connection with some of his claims, but filing administrative tort claims is not a substitute for compliance with an inmate grievance procedure.  McClenton v. Menifee, 05 Civ. 2844 (JGK), 2006 WL 2474872 at *16 (S.D.N.Y. Aug. 22, 2006) (Koeltl, D.J.); Nwaokocha v. Sadowski, 369 F. Supp. 2d 362, 368 (E.D.N.Y. 2005); Owusu v. Fed. Bureau of Prisons, 02 Civ. 0915 (NRB), 2003 WL 68031 at *3 (S.D.N.Y. Jan. 7, 2003) (Buchwald, D.J.).  Similarly, although plaintiff states broadly that he submitted letters and made "oral request[s and] complaints about all the issue of this action," (1-14-10 2d Am. Compl. at 12), such measures also fail to satisfy the PLRA's exhaustion requirement. Harrison v. Goord, 07 Civ. 1806 (HB), 2009 WL 1605770 at *8 (S.D.N.Y. June 9, 2009) (Baer, D.J.); Arce v. Keane, 01 Civ. 2648 (BSJ), 2004 WL 439428 at *4 (S.D.N.Y. Mar. 9, 2004) (Jones, D.J.); see Singh v. Goord, 520 F. Supp. 2d 487, 495 (S.D.N.Y. 2007) (Robinson, D.J.); Scott v. Gardner, 287 F. Supp. 2d 477, 488 (S.D.N.Y. 2003) (Sweet, D.J.).

"While 'our circuit has recognized that . . . the PLRA's exhaustion requirement is mandatory, certain caveats

apply.'" Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004),

quoting Giano v. Goord, supra, 380 F.3d at 677.

> [A] three-part inquiry is appropriate in cases where a
> prisoner plaintiff plausibly seeks to counter defen-
> dants' contention that the prisoner has failed to
> exhaust available administrative remedies as required
> by the PLRA, 42 U.S.C. § 1997e(a).  Depending on the
> inmate's explanation for the alleged failure to ex-
> haust, the court must ask whether administrative reme-
> dies were in fact "available" to the prisoner. Abney v.
> McGinnis, 380 F.3d 663, 2004 WL 1842647.  The court
> should also inquire as to whether the defendants may
> have forfeited the affirmative defense of
> non-exhaustion by failing to raise or preserve it,
> Johnson v. Testman, 380 F.3d 691, 2004 WL 1842669, or
> whether the defendants' own actions inhibiting the
> inmate's exhaustion of remedies may estop one or more
> of the defendants from raising the plaintiff's failure
> to exhaust as a defense, Ziemba[v. Wezner], 366 F.3d
> [161, 163 (2d Cir. 2004)].  If the court finds that
> administrative remedies were available to the plain-
> tiff, and that the defendants are not estopped and have
> not forfeited their non-exhaustion defense, but that
> the plaintiff nevertheless did not exhaust available
> remedies, the court should consider whether "special
> circumstances" have been plausibly alleged that justify
> "the prisoner's failure to comply with administrative
> procedural requirements." Giano v. Goord, 380 F.3d
> 670, 2004 WL 1842652 (citing Berry v. Kerik, 366 F.3d
> 85, 88 (2d Cir. 2003); Rodriguez order).

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); see

Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007); Brownell v. Krom,

446 F.3d 305, 311-12 (2d Cir. 2006).

Plaintiff makes several arguments in an apparent

attempt bring his case within these "caveats."  Plaintiff first

appears to allege that the grievance procedure was not, in fact,

available to him.  He characterizes the MCC grievance procedure

as "negligent and deliberately indifferent" based on his experi-
ence filing grievances unrelated to the instant case (Pl's Aff.
at 5).  He states that he tried to appeal a unit manager's July
25, 2007 decision, but a "counselor" refused to give him a copy
of the decision until the deadline for filing the appeal had
passed (1-14-10 2d Am. Compl. at 13) and that on November 15,
2007 he was "barred" from filing an appeal related to another
incident (2nd Am. Complaint at 12).  He also states that on
November 20, 2007, he tried to appeal the informal resolution of
yet another incident, and that the MCC "administrative remedy
office" rejected the appeal because he did not file enough carbon
copies (Pl's Aff. at 3-4).  When he re-filed the appeal on
November 26, 2007, the administrative office misplaced it and,
approximately six weeks later, told him to file a new one (Pl's
Aff. at 4).  Plaintiff then re-filed the appeal on January 8,
2008 and the administrative office then rejected it as untimely
(Pl's Aff. at 4).  Plaintiff also alleges that the administrative
office later found his November 26, 2007 appeal and rejected it
on January 20, 2008 because he did not file enough carbon copies
(Pl's Aff. at 4-5).

        Plaintiff's characterization of those in charge of the
administrative remedy process as negligent and deliberately
indifferent does not render the administrative grievance proce-
dure unavailable to him.  An inmate's perception, based on past

experience, that the grievance process will be unsuccessful, does not relieve an inmate of the exhaustion requirement.  Shariff v. Coombe, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) (Jones, D.J.) ("Plaintiffs' perception that the [prison] grievance program was ineffective or that the filing of grievances was futile is insufficient to negate the PLRA's exhaustion requirement"); Johnson v. Killian, 07 Civ. 6641 (LTS)(DFE), 2009 WL 1066248 at *5 (S.D.N.Y. April 21, 2009) (Swain, D.J.), citing Woodford v. Ngo, 548 U.S. 81, 89-90 (2006) ("prediction of denial, even if wholly reasonable, does not warrant depriving the prison adminis-tration of the opportunity to address the claim in the first instance, a paramount goal of the PLRA"); Berry v. City of New York, 00 Civ. 2834 (RMB)(JCF), 2002 WL 31045943 at *7 (S.D.N.Y. June 11, 2002) (Francis, M.J.) (Report & Recommendation), citing Giano v. Goord, supra, 250 F.3d at 150-151 ("It is well estab-lished that the PLRA's exhaustion requirement cannot be waived based upon the plaintiff's belief that pursuing administrative remedies would be ineffective or futile"); see Arce v. Keane, supra, 2004 WL 439428 at *5.

Plaintiff also alleges that his complaints in connec-tion with this action have been "neglected" and met with "delib-erately indifference" (1-14-10 2d Am. Compl. at 13; Pl's Aff. at 4).  Specifically, he alleges that prison staff "refused to endorse" administrative grievance forms in connection with the

May 25, 2008 altercation and did not give him a copy of a disci-
plinary hearing officer's decision which he needed in order to
file his appeal (Pl's Aff. at 7).  These allegations similarly do
not render administrative remedies unavailable to the plaintiff.
The BP-8 and BP-9 forms attached to plaintiff's submission do not
require a staff endorsement, and appear to require a staff
signature only upon disposition (see Pl's Aff. Ex. E, F, G, I).
If plaintiff is alleging that prison staff never responded to his
complaints, such an allegation does not excuse the exhaustion
requirement.  Harrison v. Goord, supra, 2009 WL 1605770 at *8;
Clarke v. Thornton, 515 F. Supp. 2d 435, 440 (S.D.N.Y. 2007)
(Marrero, D.J.); Lashley v. Artuz, 01 Civ. 11542 (SAS), 2004 WL
1192090 at *2 (S.D.N.Y. May 27, 2004) (Scheindlin, D.J.).  With
respect to plaintiff's allegation that an administrative officer
"failed to serve him with the disciplinary officer's decision"
that he allegedly needed in order to file his appeal, refusal by
prison staff to provide materials necessary to file administra-
tive grievances does not excuse failure to exhaust when a plain-
tiff could have nonetheless made reasonable efforts to exhaust
his administrative remedies.  See Gardner v. Rivera, 535 F. Supp.
2d 430, 432 (S.D.N.Y. 2008) (Marrero, D.J.) (The failure of
prison officials to provide plaintiff with grievance numbers did
not excuse failure to exhaust.  Plaintiff had filed grievances in
the past and could have filed a grievance explaining the offi-

cials' failure to provide this information.); Clarke v. Thornton, supra, 515 F. Supp. 2d at 439 ("[a] correctional facility's failure to make forms or administrative opinions 'available' to the prisoner does not relieve the inmate from [the] burden [of exhaustion]").

Plaintiff also states that "he was not aware of the prisoner exhaustion as [to] tort claims" until February 21, 2008 (1-14-10 2d Am. Compl. at 12). The numerous grievances described above demonstrate that plaintiff was aware of the administrative grievance process well before 2008. Accordingly, I construe this allegation to refer to the administrative claim that is a condition precedent to a claim under the FTCA. As discussed above, FTCA administrative claims have no bearing on the necessity of a prisoner's complying with the PLRA exhaustion requirement.

Next plaintiff claims that he was unable to exhaust his administrative remedies because he was transferred from the MCC to the Metropolitan Detention Center in Brooklyn, New York (Pl's Aff. at 6). Because the Federal Bureau of Prisons operates both the MCC and Metropolitan Detention Center, plaintiff's transfer did not render administrative remedies unavailable to him. Berry v. Kerik, supra, 366 F.3d at 88 ("[a]s long as [plaintiff] was within the custody of the agency against which he had grievances . . . he was required to use available grievance procedures."); White v. Ercole, 06 Civ. 11361 (DAB), 2009 WL 602890 at *5

(S.D.N.Y. Mar. 3, 2009) (Batts, D.J.) (adopting Report & Recom-
mendation of Eaton, M.J.); see Leacock v. City of New York, 01
Civ. 2849 (DLC), 2005 WL 323723 at *5 (S.D.N.Y. Feb. 10, 2005)
(Cote, D.J.); Finger v. McFinnis, 99 Civ. 9870 (LTS)(THK), 2004
WL 1367506 at *4 (S.D.N.Y. June 16, 2004) (Swain, D.J.).

        Finally, plaintiff states that on February 21, 2008, in
connection with his claim for loss of property, Cross instructed
him to "file a tort claim," and told him "that the prisoners
exhaustion is [i]napplicable to some of his claims" (1st Am.
Compl. at 11; 1-14-10 2d Am. Compl. at 12).  Read extremely
liberally, these allegations could be construed as an argument
that (1) based on Cross's statements, defendants are estopped
from asserting the defense of failure to exhaust or (2) Cross's
statements rendered the administrative grievance procedure
unavailable to plaintiff.  "Where a plaintiff alleges that the
defendant made misrepresentations that inhibited the plaintiff
from participating in the grievance process, dismissal of the
complaint for failure to exhaust is not appropriate." Sereika v.
Patel, 411 F. Supp. 2d 397, 403 (S.D.N.Y. 2006) (Marrero, D.J.),
citing Feliciano v. Goord, 97 Civ. 0263, 1998 WL 436358, at *2
(S.D.N.Y. July 27, 1998) (Cote, D.J.) and Davis v. Frazier, 98
Civ. 2658, 1999 WL 395414, at *4 (S.D.N.Y. June 15, 1999) (Baer,
D.J.).  Indeed, "a plaintiff may assert estoppel, and exhaustion
may be excused, if he has been led to believe that an incident

25

was not a grievance matter and would be otherwise investigated or
that filing a grievance would be futile." Rivera v. Goord, 253
F. Supp. 2d 735, 747 (S.D.N.Y. 2003) (Chin, D.J.).  Similarly,
"where a prisoner has made a 'reasonable attempt' to file a
grievance, and prison officials have prevented the prisoner from
filing that grievance, the grievance procedures are not 'avail-
able' to the defendant, and thus the [PLRA] does not preclude the
prisoner from suing in federal court." Thomas v. New York State
Dep't of Corr. Servs., 00 Civ. 7163 (NRB), 2002 WL 31164546, at
*3 (S.D.N.Y. Sept. 30, 2002) (Buchwald, D.J.); see Hollman v.
Lindsay, 08-CV-1417 (NGG), 2009 WL 3112076 at *10 (E.D.N.Y. Sept.
25, 2009); Gayle v. Benware, 08 Civ. 8017 (RBM)(FM), 2009 WL
2223910 at *5 (S.D.N.Y. July 27, 2009) (Berman, D.J.) (adopting
Report & Recommendation of Maas, M.J.).  Cross's alleged state-
ments that exhaustion did not apply to some of plaintiff's claims
and that plaintiff should file an administrative tort claim fall
at least arguably within the class of statements that preclude
dismissal for failure to exhaust.  See Sereika v. Patel, supra,
411 F. Supp. 2d at 403 (dismissal for failure to exhaust inappro-
priate based on alleged statements by prison medical staff that
plaintiff's complaints were not grievance issues and that filing
a grievance would be futile); Thomas v. New York State Dep't of
Corr. Servs., supra, 2002 WL 31164546 at *2-*3 (prison official's
alleged statements that filing a grievance was unnecessary

created issue of fact as to whether administrative remedies were available to the plaintiff); Davis v. Frazier, supra, 1999 WL 395414 at *4 (dismissal for failure to exhaust not appropriate where defendants allegedly informed plaintiff that "a grievance cannot be brought against Officers or Staff."); Feliciano v. Goord, supra, 1998 WL 436358 at *2 (dismissal for failure to exhaust was not appropriate where prison officials told plaintiff that his complaint was "not a grievance matter" and that it would be otherwise investigated).

Drawing all inferences in plaintiff's favor, Cross's statements, made in connection with plaintiff's complaint regarding his allegedly stolen property, that administrative exhaustion was inapplicable to "some of his claims" and that plaintiff should file a tort claim, could have led plaintiff to believe that exhausting the grievance procedure was not appropriate for his stolen property claim.  The fact that plaintiff did, in fact, file an administrative tort claim with respect to this claim and failed to file an administrative grievance further supports this conclusion.  Therefore, dismissal of this claim for failure to exhaust is inappropriate.

Cross's alleged statements, however, do not excuse plaintiff's failure to file grievances with respect to his other claims.  Plaintiff does not allege that he relied on Cross's statements in connection with his failure to file a grievance

27

concerning these other claims and does not allege any facts that
would support an inference of reliance.  To the contrary, plain-
tiff continued to file grievances after Cross's alleged state-
ments, negating any inference of ongoing reliance.  Therefore,
plaintiff's failure to file an administrative grievance is not
excused with respect to claims other than his claim for lost
property.  See Hepworth v. Suffolk County, 02-CV-6473 ENV/ETB,
2006 WL 2844408 at *6 (E.D.N.Y. Sept. 29, 2006) (in order ade-
quately plead estoppel, inmate plaintiff must allege reliance);
McCullough v. Burroughs, 04-CV-3216 (FB)(LB), 2005 WL 3164248 at
*4 (E.D.N.Y. Nov. 29, 2005) (same); see, e.g. Berry v. City of
New York, supra, 2002 WL 31045943 at *8 ("the fact that the
plaintiff actually did file several grievances and was successful
in at least one case belies the notion that this statement led
him to believe that the filing of a grievance [was] impossible or
futile."); Arce v. Keane, supra, 2004 WL 439428 at *4 (plain-
tiffs' apparent lack of reliance on defendant's statements based
on subsequent filing of grievance weighed against a conclusion
that defendant's statements had rendered administrative grievance
procedure unavailable); see also Harrison v. Goord, supra, 2009
WL 1605770 at *6 (alleged threats and mail-tampering did not
render administrative remedies unavailable where plaintiff
proceeded to file many grievances).

Therefore, because plaintiff has not exhausted the administrative grievance procedure with respect to his claims against Cho, Fields, or Scott, or with respect to his claims against Garcia and Cross for supervisory liability in connection with their actions, all of these claims are subject to dismissal. Because plaintiff may still have administrative remedies available to him, see 28 C.F.R. § 542.14, I recommend that this dismissal be without prejudice to renewal after plaintiff has exhausted his administrative remedies.

Similarly, because plaintiff has not exhausted the administrative grievance procedure with respect to his claims against Perlaza, plaintiff's motion to amend the complaint to include such claims is futile and should be denied.

### 2. Stolen Property Claim

#### a. Claims against Officer Pena

Plaintiff alleges that Pena violated his Fifth and Eighth Amendment rights by "fail[ing] to pack" property stored in plaintiff's locker when plaintiff was sent to administrative detention (1-14-10 2d Am. Compl. at 7). Defendants contend that plaintiff's claims against Pena must fail because the allegations in the complaint amount to, at most, negligence and do not rise to the level of a constitutional violation.

29

Mere allegations of negligence cannot support plaintiff's Fifth Amendment claims.[5]  Indeed "negligently inflicted harm 'is categorically beneath the threshold of constitutional due process'"  Matican v. City of New York, 524 F.3d 151, 158 (2d Cir. 2008), quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); Shannon v. Jacobowitz, 394 F.3d 90, 94 (2d Cir. 2005), quoting Daniels v. Williams, 474 U.S. 327 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987).

Plaintiff alleges that after he was placed in administrative detention, Pena "failed to pack" his property for over five days, and that as a result, other inmates broke into his locker and stole his property.  These facts, at most, support an inference of negligent conduct, and, thus, are insufficient to survive a motion to dismiss.  See Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003), citing Daniels v. Williams, supra, 474 U.S. at 328-31 and Davidson v. Cannon, 474 U.S. 344, 347-48 (1986) (to state a constitutional claim complaint must contain "sufficient factual allegations that the intentional or reckless conduct of a state official caused the

---

[5]Because plaintiff is a pretrial detainee, his rights concerning the conditions of his confinement are derived from the Due Process Clause rather than the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991).

plaintiff's injury"); <u>see</u>, <u>e</u>.<u>g</u>., <u>Myrie v. Calvo/Calvoba</u>, 591 F. Supp. 2d 620, 627-28 (S.D.N.Y. 2008) (McMahon, D.J.) (allegations that prison officials failed to schedule a medical appointment, resulting in injury to plaintiff's eyes did not state constitutional claim); <u>Ella v. Jackson</u>, 95 Civ. 2314 (AGS), 1996 WL 673819 at *3-*4 (S.D.N.Y. Nov. 20, 1996) (Schwartz, D.J.), <u>aff'd</u>, 216 F.3d 1071 (2d Cir. 2000) (allegations that corrections officer left inmate's door open, resulting in an attack and theft by other inmates did not state a claim for constitutional violation).

Plaintiff's conclusory allegation that Pena's conduct was "reckless" (1-14-10 2d Am. Compl. at 7), without more, similarly does not adequately allege a constitutional violation. <u>See</u> <u>Alston v. Bendheim</u>, 08 Civ. 1517, 2009 WL 4035574 at *4 (S.D.N.Y. Nov. 23, 2009) (Sweet, D.J.) (allegations of deliberate indifference did not give rise to a constitutional violation where complaint's allegations amounted to, at most, negligence); <u>Dewick v. Vill. of Penn Yan</u>, 972 F. Supp. 166, 169 (W.D.N.Y. 1997) (allegations, unsupported by facts, that defendant acted "recklessly" did not state a claim for a constitutional violation). Plaintiff, thus, fails to allege any facts which even arguably support an inference that Pena acted recklessly.

            b. Claims against
               Garcia and Cross

          Because the allegations in connection with plaintiff's

loss of property do not rise to the level of a constitutional

violation, plaintiff's claims against Garcia and Cross in connec-

tion with Pena's conduct must also be dismissed.  The claims

against Garcia and Cross appear to be based on the theory that

they failed to supervise Pena properly.  However, because the

complaint fails to state a claim against Pena, it necessarily

fails to state a claim against her supervisors.  See Bryant v.

Maffucci, 923 F.2d 979, 984 (2d Cir. 1991) ("Obviously, if

[prison doctor and assistant wardens] cannot be held liable for

their conduct because it was at most negligent, it follows

logically that [commissioner and warden], who are only implicated

because of their supervisory authority over the practices and

procedures followed at the prison, also are not subject to being

held liable."); see also Benitez v. Locastro, 04-CV-423, 2008 WL

4767439 at *12 (N.D.N.Y. Oct. 28, 2008); Battice v. Phillip, CV-

04-669 (FB)(LB), 2006 WL 2190565 at *9 (E.D.N.Y. Aug. 2, 2006).


          3. Remaining Claims Against
             Defendants Hugh, Larry and Garfield

          Plaintiff also alleges that three other inmates --

Hugh, Larry, and Garfield -- attacked him with a broomstick, a

knife, and a wooden brush and that he suffered injuries as a

                               32

result.  Plaintiff has not alleged any basis for federal subject matter jurisdiction over these claims.

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'"  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006), quoting 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255 (2d Cir. 2006) ("where, as here, the "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").  Thus, because I recommend that all of plaintiff's claims against the Federal Defendants be dismissed, I further recommend that plaintiff's remaining claims against Hugh, Larry and Garfield be dismissed as a matter of discretion.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that defendant's motion to dismiss (Docket Item

33

30) be granted.  I recommend that plaintiffs' claims against defendant Pena be dismissed with prejudice and that plaintiff's remaining claims against the Federal Defendants be dismissed without prejudice.  I further recommend that plaintiff's motion to amend (Docket Item 47) be denied without prejudice and that plaintiff's application to withdraw his April 2009 motion (Docket Item 34) be granted.  I further recommend that plaintiff's common law claims be dismissed as a matter of discretion.  Finally, I note that although plaintiff is entitled to leniency because of his pro se status, he has now made three attempts to state a claim upon which relief can be granted.  Therefore, I recommend that plaintiff be cautioned that if his next attempt at pleading is equally deficient, his case may be dismissed with prejudice.

V.   Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(d).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell, United States District Judge, 500 Pearl Street, Room 1950, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street,

Room 750, New York, New York 10007.  Any requests for an exten-
sion of time for filing objections must be directed to Judge
Holwell.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT
IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.
Thomas v. Arn, 474 U.S. 140, 155 (1985); IUE AFL-CIO Pension Fund
v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson,
968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838
F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234,
237-38 (2d Cir. 1983).

Dated:  New York, New York
        March 1, 2010

                                    SO ORDERED


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Mr. Moustapha Magassouba
Reg. No. 55389-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, New York  11232

Jean D. Barnea, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York 10007